# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff/Respondent,

vs.                                 No. CIV 16-0499 JB/KRS
                                        No. CR 07-1164 JB

ROBERT LESTER HAMMONS,

        Defendant/Movant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) Defendant-Movant Robert L. Hammons' Motion to Correct Sentence Pursuant to 28 U.S.C. § 2255, filed June 24, 2016 (CIV Doc. 6)(CR Doc. 114)("Motion"); (ii) the United States Magistrate Judge's Proposed Findings and Recommended Disposition, filed April 25, 2016 (CIV Doc. 28)(CR Doc. 136)("PFRD"); (iii) Defendant-Movant's Objection to United States Magistrate Judge's Proposed Findings & Recommendations, filed May 10, 2017 (CIV Doc. 31)(CR Doc. 137)("PFRD Objections"); and (iv) the Amended Proposed Findings and Recommended Disposition, filed June 26, 2017 (CIV Doc. 33)(CR Doc. 139)("Amended PFRD"). [1] The primary issues are: (i) whether, in light of the Supreme Court of the United States' decisions in Johnson v. United States, 559 U.S. 133 (2010)("Johnson I) and Johnson v. United States, 135 S. Ct. 2551 (2015)("Johnson II"), New

---

[1] Hammons applies for relief by motion under 28 U.S.C. § 2255, but before filing the Motion, Hammons filed a pro se petition writ of habeas corpus under 28 U.S.C. § 2241. See Motion at 2 n.1. The Clerk of the Court properly docketed Hammons' petition as a civil matter. See Harris v. Nelson, 394 U.S. 286, 293 (1969)(Fortas, J.)("It is, of course, true that habeas corpus proceedings are characterized as 'civil.'"). A § 2255 motion, on the other hand, "is entered on the docket of the original criminal case and is typically referred to the judge who originally presided over the challenged proceedings." Wall v. Kholi, 562 U.S. 545, 560 (2011)(Alito, J.). Consequently, some relevant documents were filed in the civil case, Hammons v. Tracy, No. CIV 16-0499, while others were filed in the criminal case, United States v. Hammons, No. CR 07-1164, and still others were filed in both. See United States v. Bergman, 746 F.3d 1128, 1130 (10th Cir. 2014)(Gorsuch, J.)("No doubt this appeal's curious procedural posture owes at least something to § 2255's enigmatic character."). To accommodate this peculiarity, the Court indicates whether a particular document number refers to the civil or criminal case, and it provides a civil number and a criminal number for documents filed in both cases.

Mexico aggravated assault against a household member with a deadly weapon, defined by N.M. Stat. Ann. § 30-3-13, is an Armed Career Criminal Act, 18 U.S.C. § 924, ("ACCA"), violent felony; and (ii) whether Oregon first-degree robbery, defined by Or. Rev. Stat. Ann. § 164.415, is an ACCA violent felony. The Court stands by its earlier, post-<u>Johnson I</u> determination that New Mexico aggravated assault against a household member with a deadly weapon has "as an element the use, attempted use, or threatened use of physical force against the person of another," 18 U.S.C. § 924(e)(2)(B)(i)("Elements Clause"), and, thus, qualifies as an ACCA violent felony. <u>See</u> Memorandum Opinion and Order at 35, 2010 WL 4321693, at *19, filed October 6, 2010 (CR Doc. 73)("Sentencing MOO")(quoting 18 U.S.C. § 924(e)). The Court also determines that Oregon first-degree robbery likewise qualifies as an ACCA violent felony under the Elements Clause. Consequently, Hammons' conviction for New Mexico aggravated assault against a family member and his two convictions for Oregon first-degree robbery mean that he remains eligible for an enhanced sentence under the ACCA, notwithstanding <u>Johnson I</u> and <u>Johnson II</u>, so the Court will deny the Motion.

## FACTUAL BACKGROUND

On June 13, 2007, a grand jury returned an indictment charging Hammons with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). <u>See</u> Indictment at 1, filed June 13, 2007 (CR Doc. 1). Plaintiff United States of America and Hammons entered into a plea agreement. <u>See</u> Plea Agreement at 1, filed October 30, 2008 (CR Doc. 33). The United States then notified Hammons and the Court that it would seek an enhanced sentence under the ACCA. <u>See</u> Notice of Intention to Seek Enhanced Sentence Pursuant to the Armed Career Criminal Provisions of 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4 ¶ 4, at 2, filed April 21, 2009 (CR Doc. 38)("ACCA Notice"). The United States asserted that the "Defendant has the requisite

number of prior violent felony convictions for the purposes of 18 U.S.C. § 924(e)." ACCA Notice ¶ 3, at 1. The United States identified five such convictions: (i) a New Mexico conviction for false imprisonment; (ii) a New Mexico conviction for aggravated assault against a household member with a deadly weapon; (iii) two Oregon convictions for first-degree robbery; and (iv) an Oregon conviction for second-degree kidnapping. See ACCA Notice ¶ 3, at 1-2. See also State v. Hammons, Nos. CR 2000-5122, CR 2001-00059, Judgment, Sentence, and Order Suspending Sentence (Second Judicial District Court, County of Bernalillo, State of New Mexico, dated November 5, 2001), filed April 21, 2009 (CR Doc. 38-1)(false imprisonment and aggravated assault against a household member with a deadly weapon); State v. Hammons, No. 7010, Judgment and Sentence (Circuit Court of the State of Oregon for Umatilla County, dated December 11, 1981), filed April 21, 2009 (CR Doc. 38-3)(first-degree robbery and second-degree kidnapping); State v. Hammons, No. 52166, Order (Circuit Court of the State of Oregon for Linn County, dated October 30, 1978), filed April 21, 2009 (CR Doc. 38-2)(first-degree robbery).

Hammons objected to an ACCA enhancement. See Defendant's Objection to Imposition of Enhanced Sentence Pursuant to the Armed Career Criminal Provisions of 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4, filed August 28, 2009 (CR Doc. 47)("Sentencing Objections"). Hammons argued that neither of his New Mexico convictions were convictions for violent felonies under the ACCA. See Sentencing Objections ¶ 1, at 1 (false imprisonment); id. ¶ 10, at 8 (aggravated assault against a family member with a deadly weapon).

The Court overruled Hammons' Sentencing Objections. See Sentencing MOO at 47, 2010 WL 4321693, at *26. The Court determined that New Mexico aggravated assault against a family member with a deadly weapon is a violent crime, because it "has as an element 'the use,

attempted use, or threatened use of physical force against another person.'"  Sentencing MOO at

35, 37, 2010 WL 4321693, at *19-21 (quoting 18 U.S.C. § 924(e)).  The Court based that

determination on the "plain language of the statute."  Sentencing MOO at 35, 2010 WL 4321693,

at *20.  <u>See</u> N.M. Stat. Ann. § 30-3-13 ("Aggravated assault against a household member

consists of . . . unlawfully assaulting or striking at a household member with a deadly weapon

. . . .").  The Court also determined that New Mexico false imprisonment qualifies as an ACCA

violent felony under 18 U.S.C. § 924(e)(2)(B)(ii)("Residual Clause"), <u>see</u> Sentencing MOO at

44, 2010 WL 4321693, at *25-26, which states that -- in addition certain enumerated offenses --

crimes that "otherwise involve[] conduct that presents a serious potential risk of physical injury

to another" are ACCA violent felonies, 18 U.S.C. § 924(e)(2)(B)(ii).  In light of those two

determinations and Hammons' failure to object to the use of his Oregon convictions in the

ACCA Notice, the Court concluded that Hammons had at least three violent felony convictions.

<u>See</u> Sentencing MOO at 31, 44, 2010 WL 4321693, at *18, *25-26.  The Court accordingly

imposed a sentence of 180 months imprisonment.  <u>See</u> Judgment at 2, filed February 16, 2012

(CR Doc. 109).

<b><u>PROCEDURAL BACKGROUND</u></b>

Hammons filed a pro se habeas corpus petition on May 27, 2016.  <u>See</u> <u>Hammons v.</u>

<u>Tracy</u>, filed May 27, 2016 (CIV Doc. 1)("Habeas Petition").  The Honorable Lourdes A.

Martinez, United States Magistrate Judge, determined that Hammons "may only challenge his

conviction and sentence . . . by a motion under 28 U.S.C. § 2255 and may not seek relief under

Section 2241."  Order at 1, filed June 8, 2016 (CIV Doc. 5)(CR Doc. 113)("Recharacterization

Order").  Judge Martinez announced her intention to recharacterize the Habeas Petition as a

"motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255" and granted Hammons

- 4 -

leave to "withdraw the [Habeas Petition] or to amend it to add additional claims he may have."

Recharacterization Order at 2.

1.    **The Motion.**

Hammons filed a § 2255 motion with the assistance of appointed counsel.  See Motion at

25 (listing Charles Fisher as Hammons' attorney).  See also CJA Appointment of Charles N.

Fisher by District Judge James O. Browning, filed May 11, 2016 (CR Doc. 112).  Hammons

argues that his Motion is timely, because it was filed within one year of the Supreme Court's

decision in Welch v. United States, 136 S. Ct. 1257 (2016), which determined that Johnson II is a

substantive decision that applies retroactively in cases on collateral review.  See Motion at 2-4.

See also 28 U.S.C. § 2255(f) (stating that a petitioner can file a § 2255 motion within one year of

"the date on which the right asserted was initially recognized by the Supreme Court, if that right

has been newly recognized by the Supreme Court and made retroactively applicable").

On the Motion's merits, Hammons argues that, after Johnson II's invalidation of the

Residual Clause, New Mexico false imprisonment is no longer an ACCA violent felony.  See

Motion at 13.  Hammons also argues that New Mexico aggravated assault against a household

member with a deadly weapon is not an ACCA violent felony.  See Motion at 16.  According to

Hammons, the "'threatened use of physical force against the person of another' in the elements

or force clause should also be confined to an *intentional threat* to inflict '*violent* force -- that is,

force capable of causing physical pain or injury to another person.'"  Motion at 16 (emphases in

originals)(quoting 18 U.S.C. § 924(e); Johnson I, 559 U.S. at 140).  Hammons contrasts that

reading of the Elements Clause with "aggravated assault in New Mexico[, which] does not

require, as an element, the intentional use of violent force, or, as an element, an intent to assault

or to injure, or even to frighten."  Motion at 19.  Hammons adds that the United States "has never

disputed that the alleged 'deadly weapon'" involved in Hammons' offense "was a stun gun," Motion at 13, and he asserts that a stun gun is not a deadly weapon, see Motion at 15.

2. **The Response**.

Magistrate Judge Martinez ordered the United States to respond to the Motion, see Order at 2, filed July 5, 2016 (CIV Doc. 8)(CR Doc. 115), and the United States obliged, see United States' Response to Motion to Correct Sentence Pursuant to 28 U.S.C. § 2255 at 1, filed November 11, 2016 (CIV Doc. 20)(CR Doc. 128)("Response"). The United States concedes that, after Johnson II, Hammons' "false imprisonment convictions are no longer valid [ACCA] predicates." Response at 2. The United States argues, however, that Hammons "has three remaining valid predicates for ACCA purposes, having convictions for robbery in the first degree (two offenses) out of the state of Oregon," and a New Mexico conviction for "Aggravated Assault Against a Household Member (Deadly Weapon)." Response at 2. The United States notes that the "Defendant does not take issue or dispute the validity of his two separate Oregon robberies in the first degree qualifying as ACCA predicates," and that the Hammons' 1978 first-degree robbery and his 1981 first-degree robbery "are separate offenses that were perpetrated at separate times, locations, and victims." Response at 2.

The United States then argues that Hammons' aggravated assault against a household member with a deadly weapon conviction remains an ACCA violent felony. See Response at 4. The United States contends both that the Court's conclusion in its Sentencing MOO -- that aggravated assault against a household member with a deadly weapon qualifies as an ACCA violent felony under the Elements Clause -- "remains valid," Response at 4 (citing Sentencing MOO, 2010 WL 4321693, at *19-21), and that the United States Court of Appeals for the Tenth Circuit recently determined -- albeit in a case construing U.S.S.G. § 2L1.2(b)(1) -- that "the New

Mexico crime of aggravated assault with a deadly weapon contains as an element the use, attempted or threatened use of physical force," Response at 4 (citing <u>United States v. Maldonado-Palma</u>, 839 F.3d 1244, 1248-50 (10th Cir. 2016)(Seymour, J.)). The United States concludes by asserting that the "Defendant cannot now collaterally attack his conviction by stating that his stun gun did not qualify as a deadly weapon." Response at 8.

      **3.**      **<u>The Reply</u>.**

By way of reply, Hammons argues, for the first time, that Oregon first-degree robbery is not an ACCA violent felony. Defendant-Movant Robert L. Hammons' Reply to the United States' Response to Motion to Correct Sentence Pursuant to 28 U.S.C. § 2255 at 3, filed January 27, 2017 (CIV Doc. 23)(CR Doc. 131)("Reply"). Hammons begins that argument -- perplexingly -- by stating that "[i]n his Motion . . . Mr. Hammons conceded that the convictions in Oregon for robbery in the first degree to which Mr. Hammons pled guilty in 1978 and 1981 . . . were violent felonies." Reply at 3. Without further explanation, Hammons brings a third <u>Johnson</u> case, <u>State v. Johnson</u>, 168 P.3d 312 (Or. Ct. App. 2007)("<u>Johnson Or.</u>"), to the Court's attention, and contends that <u>Johnson Or.</u> shows that Oregon third-degree robbery is not an ACCA violent felony under the Elements Clause, because it "does not rise to the level of 'violent force' required by" <u>Johnson I</u>. Reply at 3. It follows, according to Hammons, that Oregon first-degree robbery is not an ACCA violent felony under the Elements Clause, because one commits Oregon first-degree robbery by committing Oregon third-degree robbery, and: (i) being armed with a deadly weapon; (ii) using or attempting to use a dangerous weapon; or (iii) causing or attempting to cause serious physical injury to any person. <u>See</u> Reply at 3-4. Hammons contends that those three aggravators do not satisfy the Elements Clause, so first-degree robbery, like third-degree robbery, is not an ACCA violent felony. <u>See</u> Reply at 4.

Turning to his New Mexico conviction, Hammons recognizes that "the Court may consider itself at least guided by the circuit court's ruling" in United States v. Maldonado-Palma, but he attempts to distinguish that case from his own: "However, the statute under which Mr. Hammons was convicted differs from the statute under which Mr. Maldonado-Palma was convicted, specifically requiring that the aggravated assault be against 'a household member,'" Reply at 9 (quoting N.M. Stat. Ann. § 30-3-13). Hammons then raises "the issue of whether or not a stun gun could be a 'deadly weapon' within the meaning of [N.M. Stat. Ann. § 30-1-12(B)]," only to concede that, "in light of the Court's ruling in its [Severance MOO], and the authorities cited therein, . . . Mr. Hammons may not now raise that element of the offense of conviction to collaterally attack his conviction." Reply at 9.

**4.     The PFRD.**

On April 25, 2017, Magistrate Judge Martinez issued proposed findings and recommended that the Motion "be DENIED and that this case be DISMISSED with prejudice." PFRD at 2 (emphasis omitted). Magistrate Judge Martinez acknowledges Hammons' contention that Johnson Or. "held that a conviction for Oregon third degree robbery requires only minimal force," but she observes that the "Defendant fails to note that in *State of Oregon v. Hamilton*, [233 P.3d 432 (Or. 2010),] the Oregon Supreme Court" states that it "'is the additional factor of actual or threatened violence that transforms [one's] conduct from theft, which requires only the intent to deprive, into a substantially different crime, robbery.'"  PFRD at 7 (quoting State v. Hamilton, 233 P.3d at 436).   Magistrate Judge Martinez accordingly concludes that, notwithstanding the Court of Appeals of Oregon's Johnson Or. opinion, "Oregon's third degree robbery statute satisfies *Johnson 2010's* definition of physical force," such that Oregon third-degree robbery -- and, hence, Oregon first-degree robbery -- qualifies as an ACCA violent

felony.  PFRD at 8.  Magistrate Judge Martinez also concludes, based on "the Tenth Circuit's holding in *United States v. Ramon Silva*, [608 F.3d 663 (10th Cir. 2010),] that New Mexico's aggravated assault statute constitutes a 'crime of violence' under the *Johnson 2010* standard," PFRD at 9 (citing <u>United States v. Ramon Silva</u>, 608 F.3d at 669-71), "that New Mexico's aggravated assault against a household member statute constitutes a violent felony for the purposes of the ACCA," PFRD at 10.

  **5.**  <u>**The PFRD Objections.**</u>

  Hammons objects to the PFRD.  <u>See</u> Defendant-Movant's Objections to United States Magistrate Judge's Proposed Findings & Recommendation at 1, filed May 10, 2017 (CIV Doc. 31)(CR Doc. 137)("PFRD Objections").  Hammons acknowledges the Supreme Court of Oregon's statement that actual or threatened violence turns theft into robbery, but "respectfully submit[s] that, absent the application of actual force, or alternatively evidence of the effect of any threats or intimidation upon the victim, this is insufficient to rise to" an ACCA violent felony.  PFRD Objections at 2-3.  As to New Mexico aggravated assault against a household member with a deadly weapon, Hammons admits that, in light of <u>United States v. Ramon Silva</u>, "Tenth Circuit case law does not support his contentions and argument."  PFRD Objections at 3.  Hammons "would respectfully submit that . . . the dissent authored by Judge Harris Hartz [in <u>United States v. Ramon Silva</u>] represents a well-argued and appropriate interpretation of the law regarding the statutory offenses of aggravated assault."  PFRD Objections at 3.

  **6.**  <u>**The Amended PFRD.**</u>

  When Magistrate Judge Martinez retired, the Clerk of the Court reassigned Hammons' case to the recently appointed Honorable Kevin R. Sweazea, United States Magistrate Judge, <u>see</u> Notice, filed May 3, 2017 (CIV Doc. 29), and the Court ordered Magistrate Judge Sweazea to

"submit an analysis, including findings of fact, if necessary, and recommended disposition,"
Order of Reference Relating to Prisoner Cases at 1, filed May 8, 2017 (CIV Doc 30)("Reference
Order"). Magistrate Judge Sweazea, "[a]cting under [his] inherent authority to reconsider
previous rulings" and pursuant to the Reference Order, issued the Amended PFRD, which
recommends "Hammons' motion be granted and he be resentenced." Amended PFRD at 1.
Magistrate Judge Sweazea agrees with Magistrate Judge Martinez' determination that "the crime
of aggravated assault against a household member includes the use or threatened use of violent
force and was properly used to enhance Hammons' sentence under the ACCA." Amended
PFRD at 11. Magistrate Judge Sweazea does not, however, agree with Magistrate Judge
Martinez' determination regarding Oregon third-degree robbery, and he instead agrees with
Hammons' contention "that third-degree robbery under Oregon law . . . does not entail the type
of violent, physical force sufficient to meet *Johnson 2010*." Amended PFRD at 12. Magistrate
Judge Sweazea reasons that the Court of Appeals of Oregon's determination that "a tug was
sufficient [for a third-degree robbery conviction] so long as it overcame the resistance of the
victim" means that "third-degree robbery does not meet *Johnson 2010*'s *violent*-force
requirement because only slight force is necessary to sustain a conviction." Amended PRRD at
14-15 (emphasis in original)(citing Johnson Or., 168 P.3d at 314-15). Unlike Magistrate Judge
Martinez, who reads the Supreme Court of Oregon's statements in State v. Hamilton to dictate a
contrary result, see PFRD at 7, Magistrate Judge Sweazea explains away those statements as
dicta, because "*Hamilton* turned on the definition of 'victim' under the robbery statute, not the
degree of force necessary to sustain a conviction," so "[t]he Oregon Supreme Court therefore did
not overrule *State v. Johnson* expressly or by implication." Amended PFRD at 14-15.

According to Magistrate Judge Sweazea, that Oregon third-degree robbery is not an

ACCA violent felony means that Oregon first-degree robbery is, likewise, not an ACCA violent felony, because third-degree robbery can become first-degree robbery just because the perpetrator possesses -- but does not use or make representations about -- a gun.  See Amended PFRD at 16-17.  See also id. at 21 ("Hammons' convictions do not withstand scrutiny under the ACCA's force clause because first-degree robbery may be based on mere possession of a firearm while using minimal force to deprive a victim of personal property.").  Magistrate Judge Sweazea consequently concludes that "Hammons has only one qualifying conviction under the ACCA, aggravated assault against a household member under New Mexico law."  Amended PFRD at 21.  Magistrate Judge Sweazea therefore recommends that the Court resentence Hammons.  See Amended PFRD at 21.

7.      **The Minute Order.**

On September 17, 2017, the Court issued a minute order requesting the United States to respond to the Court's inquiries regarding four issues: (i) whether the United States concedes that, after Johnson II, New Mexico false imprisonment is not an ACCA violent felony; (ii) whether the Court would err if it adopted the PFRD instead of the Amended PFRD; (iii) whether, if the Court adopts the PFRD's reasoning, the United States will defend that decision on appeal or will it, instead, concede error; and (iv) whether, and to what extent, the United States agrees with the PFRD's and the Amended PFRD's analysis.  See Minute Order, filed September 17, 2017 (CIV Doc. 35).

8.      **The Minute Order Response.**

Two months later, the United States filed its response to the Court's minute order.  See United States' Response to the Court's Minute Order of September 17, 2017 at 3, filed November 17, 2017 (CIV Doc. 36)(CR Doc. 140)("Minute Order Response").  The United

States, in its Minute Order Response, does not address whether it concedes that New Mexico false imprisonment is not an ACCA violent felony. See Minute Order Response at 2. The United States articulates its position vis-à-vis the PFRD and the Amended PFRD, which is, essentially, not to decide. See Minute Order Response at 2 (stating that "the United States has determined to accept whatever decision this honorable court may reach in this matter as to Defendant's motion," but committing to "defend the Court on appeal" if it denies Hammons' requested relief). See also Stephen A. Sondheim, On the Steps of the Palace, Into the Woods (1987)("Wait no thinking it through, things don't have to collide. I know what my decision is, which is not to decide.").

## LAW REGARDING THE ACCA

Congress adopted the ACCA to address the "special danger" that attends career offenders carrying guns. Begay v. United States, 553 U.S. 137, 146 (2008). The ACCA imposes a fifteen-year minimum sentence for individuals who violate 18 U.S.C. § 922(g) by being a felon in possession of a firearm who have "three previous convictions . . . for a violent felony or serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). The ACCA defines the term "violent felony" such that it includes

> any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that
>
> > (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> >
> > (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

18 U.S.C. § 924(e)(2)(B).

Whether a particular offense is an ACCA violent felony is a question of law.  See Johnson I, 559 U.S. at 134-35; United States v. Martinez, 602 F.3d 1166, 1168 (10th Cir. 2010). The Supreme Court held that the ACCA's Residual Clause -- i.e., "or otherwise involves conduct that presents a serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B)(ii) -- is void for vagueness, which means that imposing an enhanced sentence under the Residual Clause violates the Fifth Amendment to the Constitution of the United States of America's Due Process Clause, Johnson II, 135 S. Ct. at 2562-63.  The Supreme Court expressly limited its holding by observing that "[t]oday's decision does not call into question application of the" ACCA's Element's Clause or its list of four enumerated offences.  Johnson II, 135 S. Ct. at 2563. See 18 U.S.C. § 924(e)(2)(B)(ii)(stating that a felony that "is burglary, arson, or extortion," or involves explosives is an ACCA violent felony)("Enumerated Offenses Clause").

1.      **The Categorical and Modified Categorical Approaches.**

To determine whether an offense is for an ACCA violent felony, courts apply the "categorical approach" by looking "only to the fact of conviction and the statutory definition of the prior offense, and do not generally consider the particular facts disclosed by the record of conviction."  United States v. Scoville, 561 F.3d 1174, 1176 (10th Cir. 2009)(citation omitted). See United States v. Ramon Silva, 608 F.3d at 668 (applying the categorical approach).  All that is relevant is "'whether the elements of the offense are of the type that would justify its inclusion' within the ACCA"; the court does not "'inquir[e] into the specific conduct of this particular offender.'"  United States v. Scoville, 561 F.3d at 1176 (quoting James v. United States, 550 U.S. 192, 202 (2007)).  See Begay v. United States, 553 U.S. at 141 ("In determining whether this crime is a violent felony, we consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual

offender might have committed it on a particular occasion."); Taylor v. United States, 495 U.S. 575, 602 (1990); United States v. Hernandez, 568 F.3d 827, 829 (10th Cir. 2009). See also United States v. Alires, No. CR 14-3902, 2017 WL 2297095, at *14 (D. N.M. May 1, 2017)(Browning, J.)("The categorical approach to comparing the elements of the crime of conviction with the enumerated offenses requires the Court [to] consider only whether the elements of the crime of conviction sufficiently match the elements of the generic offence, ignoring the particular facts of the case.").

When courts analyze an "alternatively phrased law" -- a criminal statute that prohibits conduct that falls within at least one of several disjunctive sets -- they apply the "modified categorical approach." Mathis v. United States, 136 S. Ct. 2243, 2249 (2016). "The first task for a sentencing court faced with an alternatively phrased statute" is to determine whether the statute "list[s] elements in the alternative, and thereby define[s] multiple crimes," or, instead, "enumerates various factual means of committing a single element." Mathis v. United States, 136 S. Ct. at 2249, 2256. If a statute lists multiple alternative elements, then courts "review the record materials to discover which of the enumerated alternatives played a part in the defendant's prior conviction." Mathis v. United States, 136 S. Ct. at 2256. See United States v. Alires, 2017 WL 2297095, at *14 ("The 'modified' categorical approach is applied where the statute is 'divisible' -- meaning that it contains multiple alternative elements and thus defines multiple crimes."). If the statute lists multiple means of committing a single element, "the court has no call to decide which of the statutory alternatives was at issue in the earlier prosecution." Mathis v. United States, 136 S. Ct. at 2256. The Supreme Court did not provide a clear test for determining whether a particular statutory list describes elements or means, but it pointed to three distinct sources of authority. See Mathis v. United States, 136 S. Ct. at 2256-57. First,

state court decisions can definitively answer the question.  See Mathis v. United States, 136 S.

Ct. at 2256.  Second, "the statute on its face may resolve the issue," because, if alternatives carry

different punishments, they must be elements.  Mathis v. United States, 136 S. Ct. at 2256.  If all

else fails, a peek at "the record of a prior conviction itself" can "reveal what the prosecutor has to

(and does not have to) demonstrate to prevail."  Mathis v. United States, 136 S. Ct. at 2256-57.

**2.        The Elements Clause.**

The Supreme Court determined that the Elements Clause -- i.e., "has as an element the

use, attempted use, or threatened use of physical force against the person of another," 18 U.S.C.

§ 924(e)(2)(B)(i) -- does not refer to offenses that have, as an element, "the slightest offensive

touching," because "the phrase 'physical force' means violent force -- that is, force capable of

causing physical pain or injury to another person," Johnson I, 559 U.S. at 139-40.

In United States v. Hernandez, the Tenth Circuit analyzed whether Texas' crime of

deadly conduct[2] is a violent felony under the Elements Clause.  Because the defendant argued

---

[2]Texas law defines the crime of deadly conduct, in pertinent part, as:

(a) A person commits an offense if he recklessly engages in conduct that places
another in imminent danger of serious bodily injury.

(b) A person commits an offense if he knowingly discharges a firearm at or in the
direction of:

(1) one or more individuals; or

(2) a habitation, building, or vehicle and is reckless as to whether
the habitation, building, vehicle is occupied.

(c) Recklessness and danger are presumed if the actor knowingly pointed a
firearm at or in the direction of another whether or not the actor believed the
firearm to be loaded.

. . . .

that the Texas crime of deadly conduct is too broad to categorically constitute a violent felony, the Tenth Circuit applied a modified categorical approach, looking to the charging documents and documents of conviction to uncover the allegation that the defendant "knowingly discharged a firearm in the direction of an individual." United States v. Hernandez, 568 F.3d at 829-30. The Tenth Circuit concluded that Hernandez' conduct has as an element "the use, attempted use, or threatened use of physical force against another person," and held that the charged crime is a "violent felony" under the Elements Clause. United States v. Hernandez, 568 F.3d at 830.

In United States v. Herron, the Tenth Circuit held that Colorado's menacing statute[3] constitutes a violent felony under the Elements Clause, and that "threatening or engaging in menacing conduct with a deadly weapon," such that a victim believes he or she is in danger of receiving an immediate battery, has as an element the threatened use of physical force against another person. United States v. Herron, 432 F.3d 1127, 1138 (10th Cir. 2005). The defendant

---

(e) An offense under Subsection (a) is a Class A misdemeanor. An offense under Subsection (b) is a felony of the third degree.

Tex. Penal Code Ann. § 22.05.

[3]Colorado defines menacing as follows:

A person commits the crime of menacing if, by any threat or physical action, he or she knowingly places or attempts to place another person in fear of imminent serious bodily injury. Menacing is a class 3 misdemeanor, but, it is a class 5 felony if committed:

(a) By the use of a deadly weapon or any article used or fashioned in a manner to cause a person to reasonably believe that the article is a deadly weapon; or

(b) By the person representing verbally or otherwise that he or she is armed with a deadly weapon.

C.R.S.A. § 18-3-206.

argued that menacing was not a "violent felony," because the term deadly weapon[4] is defined so broadly as to include a fist, foot, or whiskey bottle, meaning that menacing includes conduct such as telling someone over the telephone that you are going to punch or kick them. 432 F.3d at 1138. The Tenth Circuit stated: "Knowingly placing someone in fear . . . by the use of a deadly weapon certainly constitutes threatening someone," and "[a] threat to kick or strike someone comes within the ACCA definition regardless of whether a foot or bottle is a deadly weapon." 432 F.3d at 1138.

**3.    The Enumerated Offenses Clause.**

In <u>Taylor v. United States</u>, 495 U.S. at 575, the case in which the Supreme Court endorses the "categorical approach," the question is whether the word "burglary" -- an offense listed in the Enumerated Offenses Clause -- holds a "uniform definition independent of the labels employed by the various States' criminal codes." 495 U.S. at 592. The Supreme Court decided that an offense constitutes "burglary" under the ACCA if, regardless of its statutory description, it has the basic elements of a "generic" burglary -- <u>i.e.</u>, an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime -- or if the charging paper and jury instructions required the jury to find all the elements of generic burglary to

_____

[4]Colorado defines a deadly weapon as follows:

"Deadly weapon" means any of the following which in the manner it is used or intended to be used is capable of producing death or serious bodily injury: (I) A firearm, whether loaded or unloaded; (II) A knife; (III) A bludgeon; or (IV) Any other weapon, device, instrument, material, or substance, whether animate or inanimate.

C.R.S.A. § 18-1-901(3)(e). New Mexico's aggravated assault statute does not define "deadly weapon." The New Mexico Criminal Code's uniform definition defines "deadly weapon" as "any firearm, whether loaded or unloaded; or any weapon which is capable of producing death or great bodily harm . . . or any other weapons with which dangerous wounds can be inflicted." N.M.S.A. 1978, § 30-1-12B (1963).

convict the defendant. 495 U.S. at 599. The Supreme Court concludes that Congress uses the word "burglary" in "the generic sense in which the term is now used in the criminal codes of most States." 495 U.S. at 589, 598 ("It seems to us implausible that Congress intended the meaning of 'burglary' for purposes of § 924(e) to depend on the definition adopted by the State of conviction."). The Supreme Court explains:

> The convicting State's definition of "burglary" cannot control the word's meaning under § 924(e), since that would allow sentence enhancement for identical conduct in different States to turn upon whether the particular States happened to call the conduct "burglary." That result is not required by § 924(e)'s omission of a "burglary" definition contained in a prior version of the statute absent a clear indication that Congress intended by the deletion to abandon its general approach of using uniform categorical definitions for predicate offenses. "Burglary" in § 924(e) must have some uniform definition independent of the labels used by the various States' criminal codes.

Taylor v. United States, 495 U.S. at 575. See United States v. Silva, 608 F.3d at 666 (applying the modified categorical approach "to determine 'the character of [Silva's] admitted burglary'")(citation omitted); United States v. Terrell, 593 F.3d 1084, 1091 (9th Cir. 2010)(applying the categorical and modified categorical approaches "to compare [the defendant's] prior burglary offenses to the 'generic' definition of burglary set forth in Taylor").

## RELEVANT NEW MEXICO LAW REGARDING ASSAULT

New Mexico law states that assault is a petty misdemeanor that consists of:

A.  an attempt to commit a battery upon the person of another;

B.  any unlawful act, threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery; or

C.  the use of insulting language toward another impugning his honor, delicacy or reputation

N.M. Stat. Ann. § 30-3-1. Aggravated assault is a fourth-degree felony that consists of:

A.  unlawfully assaulting or striking at another with a deadly weapon;

B.  committing assault by threatening or menacing another while wearing a mask, hood, robe or other covering upon the face, head or body, or while disguised in any manner, so as to conceal identity; or

C.  willfully and intentionally assaulting another with intent to commit any felony.

N.M. Stat. Ann. § 30-3-2.  Aggravated assault against a household member is likewise a fourth-degree felony, but it consists of either "unlawfully assaulting or striking at a household member with a deadly weapon" or "willfully and intentionally assaulting a household member with intent to commit any felony."  N.M. Stat. Ann. § 30-3-13.  Neither § 30-3-2 nor § 30-3-13 define the term "deadly weapon," but the New Mexico Criminal Code provides a general definition:

"deadly weapon" means any firearm, whether loaded or unloaded; or any weapon which is capable of producing death or great bodily harm, including but not restricted to any types of daggers . . . and all such weapons with which dangerous cuts can be given, or with which dangerous thrusts can be inflicted . . . or any other weapons with which dangerous wounds can be inflicted . . . .

N.M. Stat. Ann. § 30-1-12(B).  See State v. Nick R., 2009-NMSC-050, ¶ 15, 218 P.3d 868, 871 (observing that § 30-1-12(B) is "the Criminal Code's uniform definition of the term, applicable to a broad range of offenses involving both use and possession of deadly weapons.").

In United States v. Ramon Silva, the Tenth Circuit concluded that New Mexico aggravated assault with a deadly weapon is an ACCA violent felony.  See 608 F.3d at 672.  The Tenth Circuit focused on whether a "'defendant threatened or engaged in menacing conduct with a deadly weapon toward a victim, causing the victim to believe he or she was about to be in danger or receiving an immediate battery,'" 608 F.3d at 670 (quoting State v. Bachicha, 1991-NMCA-014, ¶ 12, 808 P.2d 52, 54); the Tenth Circuit apparently took it for granted that "attempting a battery with a deadly weapon" would qualify as an ACCA violent felony under the Elements Clause, see United States v. Ramon Silva, 608 F.3d at 669.  The Tenth Circuit reasoned:

Threatening or engaging in menacing conduct toward a victim, with a weapon capable of producing death or great bodily harm, threatens the use of "*violent* force" because by committing such an act, the aggressor communicates to his victim that he will potentially use "*violent* force" against the victim in the near-future. Additionally, "apprehension causing" aggravated assault threatens the use of "*violent* force" because the proscribed conduct always has the potential to lead to "*violent* force."

608 F.3d at 670-71 (emphasis in original).

"Proceeding from the premise that the ACCA only encompasses intentional conduct," the Tenth Circuit rejected the argument that New Mexico aggravated assault with a deadly weapon is not an ACCA violent felony under the Elements Clause because "it does not have as an element an intent to assault, injure or frighten." United States v. Ramon Silva, 608 F.3d at 672-73. The Tenth Circuit observed that New Mexico aggravated assault with a deadly weapon "requires proof of general criminal intent, which New Mexico courts have consistently 'defined as conscious wrongdoing or the purposeful doing of an act that the law declares to be a crime.'" 608 F.3d at 673 (citations omitted)(quoting State v. Campos, 1996-NMSC-043, ¶ 38 n.5, 921 P.2d 1266, 1277 n.5).[5] Accordingly, "apprehension-causing aggravated assault requires proof of more than the display of dexterity in handling a weapon; the crime requires proof that a defendant purposefully threatened or engaged in menacing conduct *toward* a victim, with a

---

[5]The Supreme Court of New Mexico has admonished:

It is important not to confuse the phrase 'general-intent crime' with that of 'general criminal intent,' which is a distinct concept. General criminal intent is the term used to define the mens rea for a crime that has no stated mens rea. This mens rea is defined as conscious wrongdoing or the purposeful doing of an act that the law declares to be a crime. The class of general-intent crimes on the other hand is best defined as the those crimes which are not specific-intent crimes, which would include both crimes with a mens rea of general criminal intent and those with a mens rea of knowledge.

State v. Campos, 1996-NMSC-043, ¶ 38 n.5, 921 P.2d at 1277 n.5 (citations omitted).

weapon capable of producing death or great bodily harm." United States v. Ramon Silva, 608 F.3d at 674 (emphasis in original). "We conclude that this intentional conduct threatens the use of physical force against the person of another, and therefore qualifies as a violent felony under the ACCA." United States v. Ramon Silva, 608 F.3d at 674. But see United States v. Miera, No. CR 12-3111, 2013 WL 6504297, at *12 (D. N.M. Nov. 22, 2013)(Browning, J.)(stating that, if it were not bound to follow United States v. Ramon Silva, it would reach a different result).

In United States v. Maldonado-Palma, the Tenth Circuit broadened United States v. Ramon Silva by concluding "that aggravated assault with a deadly weapon under N.M. Stat. Ann. § 30-3-2(A) is categorically a crime of violence under U.S.S.G. § 2L1.2," because it has "as an element the use, attempted use, or threatened use of physical force against the person of another." 839 F.3d at 1249. The Tenth Circuit looked to New Mexico's Uniform Jury Instructions to determine that New Mexico aggravated assault with a deadly weapon "ha[s] as a required element that" the defendant use -- and not just possess -- a deadly weapon. United States v. Maldonado-Palma, 839 F.3d at 1249-50. See id. at 1250 ("'It is the *use* of a deadly weapon that raises an assault to an aggravated assault not an intent to injure.'" (emphasis added by the Tenth Circuit)(quoting State v. Cruz, 1974-NMCA-077, ¶ 8, 525 P.2d 382, 384). See also id. at 1249 ("When adopted by the New Mexico Supreme Court, New Mexico's uniform jury instructions are mandatory and presumptively correct."); Grasshopper Natural Medicine, LLC v. Hartford Casualty Insurance Company, No. CIV 15-0338, 2016 WL 4009834, at *32 n.18 (D. N.M. July 7, 2016)(Browning, J.)("The Supreme Court of New Mexico's adoption of uniform jury instructions proposed by standing committees of the Court establishes a presumption that the instructions are correct statements of law."); Back v. ConocoPhillips Co., No. CIV 12-0261, 2012 WL 6846397, at *15 n.2 (D. N.M. Aug. 31, 2012)(Browning, J.)(same). The defendant's

use must be use as a deadly weapon and not use as, <u>e.g.</u>, a paperweight.  See <u>United States v.</u> <u>Maldonado-Palma</u>, 839 F.3d at 1250.  The Tenth Circuit reasoned that a deadly weapon by definition "is capable of producing death or great bodily harm or inflicting dangerous wounds," and that using such a weapon in an assault "necessarily threatens the use of physical force." <u>United States v. Maldonado-Palma</u>, 839 F.3d at 1250 (applying N.M. Stat. Ann. § 30-1-12(B)'s "deadly weapon" definition).

## **RELEVANT OREGON LAW REGARDING ROBBERY**

Under Oregon law, a person commits third-degree robbery, a Class C felony,

if in the course of committing or attempting to commit theft . . . the person uses or threatens the immediate use of physical force upon another person with the intent of:

> (a) Preventing or overcoming resistance to the taking of the property or to retention thereof immediately after the taking; or

> (b) Compelling the owner of such property or another person to deliver the property . . . .

Or. Rev. Stat. Ann. § 164.395.  In <u>Johnson Or.</u>, a purse-snatching case, the Court of Appeals of Oregon, in an opinion that Chief Judge Brewer wrote and which Presiding Judge Ortega and Judge Rosenblum both joined, rejected an argument that "there was insufficient evidence of physical force to support a conviction for robbery in the third degree."  168 P.3d at 313.  "The victim testified that she did not feel a tug or 'much of anything.'  She said, 'I couldn't really feel it.  He was so fast I couldn't feel it until he was running past the fence.'"  168 P.3d at 313.  The defendant argued that, "because the victim was unaware that her property had been taken until after it was gone, defendant necessarily did not apply force to the victim that was meant to overcome her resistance."  <u>Johnson Or.</u>, 168 P.3d at 313.  The <u>Johnson Or.</u> court rejected that argument, because "[t]he statute requires that force must be used on the victim," but it does not

"focus on the extent to which the victim may not have felt the force, but rather on the perpetrator's intent, while using force on the victim."  168 P.3d at 314.  Notwithstanding the victim's testimony, the court concluded that "the jury reasonably could infer that defendant pulled the purse off the victim's shoulder very quickly because defendant used force on the victim in order to obtain her possessions," given that "there is evidence that permitted the jury to infer that defendant pulled the purse off the victim's shoulder very quickly because he wanted to prevent any possible resistance by the victim."  168 P.3d at 314-15.

Oregon has a statutory rule that, "[w]hen the same conduct or criminal episode, though violating only one statutory provision involves two or more victims, there are as many separately punishable offenses as there are victims."  Or. Rev. Stat. Ann. § 161.067(2).  In State v. Hamilton, the Supreme Court of Oregon, in an opinion that Chief Justice De Muniz and in which Justices Gillette, Durham, Balmer, Kistler, and Walters joined, applied that rule and addressed whether a robbery victim is "the person from whom property is taken or demanded," or the person against whom force is used or threatened.  233 P.3d at 434-35.  The Supreme Court of Oregon reasoned that, because "[i]t is the additional factor of actual or threatened violence that transforms the conduct from theft" into robbery, "a 'victim' of robbery includes a person against whom a defendant uses or threatens violence in the course of committing or attempting to commit theft."  State v. Hamilton, 233 P.3d at 436.  See State v. Williams, 209 P.3d 842, 844-45 (Or. Ct. App. 2009)(Sercombe, P.J., joined by Brewer, C.J., and Deits, S.J.)(reaching the same conclusion for the same reasons).

The United States District Court for the District of Oregon recently concluded that Oregon third-degree robbery is not an ACCA violent felony, because, in its view, Johnson Or. "shows that a conviction under ORS 164.395(1) requires only minimal force."  United States v.

_Dunlap_, 162 F. Supp. 3d 1106, 1114 (2016)(Aiken, J.). The <u>United States v. Dunlap</u> court reached that conclusion by comparing the force used in <u>Johnson Or.</u> to the force "discussed in [<u>United States v. ]Flores-Caldero[</u>, 723 F.3d 1085 (9th Cir. 2013)(Schroeder, J.)]." <u>United States v. Dunlap</u>, 162 F. Supp. 3d at 1115. In <u>United States v. Flores-Caldero</u>, the United States Court of Appeals for the Ninth Circuit reasoned that, because the Court of Appeals of Arizona affirmed a resisting-arrest conviction "prompted by the defendant's struggle to keep from being handcuffed," which included "kick[ing] the officers trying to control her" and "could be characterized as a 'minor scuffle,'" Arizona resisting arrest does "not necessarily involve force capable of inflicting pain or causing injury as contemplated by the Supreme Court's definition of violence in" <u>Johnson I</u>. <u>United States v. Flores-Caldero</u>, 723 F.3d at 1088 (citing <u>State v. Lee</u>, 176 P.3d 712, 713 (Ariz. Ct. App. 2008)).

A person commits Oregon second-degree robbery, a Class B felony, when that person commits Oregon third-degree robbery and: "(a) Represents by word or conduct that the person is armed with what purports to be a dangerous or deadly weapon; or (b) Is aided by another person actually present." Or. Rev. Stat. Ann. § 164.405. One commits Oregon first-degree robbery, a Class A felony, when one commits Oregon third-degree robbery and: "(a) Is armed with a deadly weapon; (b) Uses or attempts to use a dangerous weapon; or (c) Causes or attempts to cause serious physical injury to any person." Or. Rev. Stat. Ann. § 164.415. A deadly weapon is "any instrument, article or substance specifically designed for and presently capable of causing death or serious physical injury." Or. Rev. Stat. Ann. § 161.015(2). A dangerous weapon is "any weapon, device, instrument, material or substance which under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or serious physical injury." Or. Rev. Stat. Ann. § 161.015(1).

## ANALYSIS

The Court concludes that New Mexico aggravated assault against a family member with a deadly weapon is an ACCA violent felony under the Elements Clause. The Court also concludes that Oregon third-degree robbery is an ACCA violent felony under the Elements Clause. It follows that Hammons' conviction for New Mexico aggravated assault against a family member with a deadly weapon and his two convictions for Oregon third-degree robbery are all ACCA violent felony convictions. The Court accordingly concludes that Hammons remains eligible for an ACCA enhanced sentence and denies the Motion.

## I.   NEW MEXICO AGGRAVATED ASSAULT AGAINST A HOUSEHOLD MEMBER WITH A DEADLY WEAPON IS AN ACCA VIOLENT FELONY.

Hammons was convicted, pursuant to a no-contest plea, of aggravated assault against a household member with a deadly weapon on October 9, 2001. See New Mexico v. Hammons, No. CR 2001-0059, Judgment, Sentence, and Order Suspending Sentence at 1 (Second Judicial District Court, County of Bernalillo, State of New Mexico, dated November 5, 2001), filed April 21, 2009 (CR Doc. 38-1). Hammons concedes that he cannot now collaterally attack that conviction. See Reply at 9. The only issue regarding Hammons' New Mexico aggravated assault against a household member with a deadly weapon conviction that is relevant to his Motion is, thus, whether that conviction is for an ACCA violent felony.

Regardless how one commits an assault, see N.M. Stat. Ann. § 30-3-1 (listing three alternative ways to commit assault), aggravated assault with a deadly weapon occurs if and only if, in committing that assault, one uses a deadly weapon -- i.e., "any firearm, whether loaded or unloaded; or any weapon which is capable of producing death or great bodily harm . . . or any other weapons with which dangerous wounds can be inflicted," N.M. Stat. Ann. § 30-1-12(B) --

as a deadly weapon.  See United States v. Maldonado-Palma, 839 F.3d at 1250.  Simply

possessing a deadly weapon does not suffice.  See United States v. Maldonado-Palma, 839 F.3d

at 1250.  "Employing a weapon that is capable of producing death or great bodily harm or

inflicting dangerous wounds in an assault necessarily threatens the use of physical force, i.e.,

'force capable of causing physical pain or injury to another person.'"  United States v.

Maldonado-Palma, 839 F.3d at 1250 (quoting Johnson I, 559 U.S. at 140).  Therefore, New

Mexico aggravated assault with a deadly weapon requires using or threatening the use of

physical force.

Further, New Mexico aggravated assault with a deadly weapon requires the perpetrator's

use of a deadly weapon to be intentional.  See United States v. Ramon Silva, 608 F.3d at 672

(citing State v. Bachicha, 1991-NMCA-014, ¶ 10, 808 P.2d at 54)(stating that New Mexico

aggravated assault requires proof of general criminal intent).  Consequently, in an aggravated

assault with a deadly weapon prosecution, "the state must prove to [the jurors'] satisfaction

beyond a reasonable doubt that the defendant acted intentionally when he committed the crime.

A person acts intentionally when he purposely does an act which the law declares to be a crime."

N.M. U.J.I. 14-141.  See id. n.1 ("This instruction must be used with every crime except for the

relatively few crimes not requiring criminal intent or those crimes in which the intent is specified

in the statute or instruction.").  See also United States v. Maldonado-Palma, 839 F.2d at 1249

("When adopted by the New Mexico Supreme Court, New Mexico's uniform jury instructions

are mandatory and presumptively correct."); Grasshopper Natural Medicine, LLC v. Hartford

Casualty Insurance Company, No. CIV 15-0338, 2016 WL 4009834, at *32 n.18 (D. N.M. July

7, 2016)(Browning, J.)("The Supreme Court of New Mexico's adoption of uniform jury

instructions proposed by standing committees of the Court establishes a presumption that the

instructions are correct statements of law."); <u>Back v. ConocoPhillips Co.</u>, No. CIV 12-0261,

2012 WL 6846397, at *15 n.2 (D. N.M. Aug. 31, 2012)(Browning, J.)(same).

Because New Mexico aggravated assault with a deadly weapon requires the intentional

use of a deadly weapon, and because the use of a deadly weapon necessarily uses or threatens the

use of physical force, that offense is an ACCA violent felony under the Elements Clause, <u>i.e.</u>, it

"has as an element the use, attempted use, or threatened use of physical force against the person

of another."  18 U.S.C. § 924(e)(2)(B)(i).  The Court does not agree with Hammons' argument

that, because "'the use [. . .] of physical force against the person of another' requires an intent to

use force against another, 'the *threatened* use of physical force against the person of another,'

likewise requires an *intentional* threat -- that is, conduct performed with at least an intent to

induce fear of a battery," Motion at 22 (emphasis in original)(quoting 18 U.S.C.

§ 924(e)(2)(B)(i)), because that argument proceeds from a false premise.   While the use of

physical force against the person of another "excludes 'merely accidental' conduct," it does not

require an intent to use force against the person of another, because "the word 'use' does not

exclude . . . an act of force carried out in conscious disregard of its substantial risk of causing

harm."  <u>Voisine v. United States</u>, 136 S. Ct. 2272, 2279 (2016)(Kagan, J.)(quoting <u>Leocal v.</u>

<u>Ashcroft</u>, 543 U.S. 1, 9 (2004))(construing 18 U.S.C. § 921(a)(33)(A)).  "Or, otherwise said, that

word is indifferent as to whether the actor has the mental state of intention, knowledge, or

recklessness with respect to the harmful consequences of his volitional conduct."  <u>Voisine v.</u>

<u>United States</u>, 136 S. Ct. at 2279.  <u>See</u> <u>id.</u> ("The harm [reckless] conduct causes is the result of a

deliberate decision to endanger another . . . .").  <u>See</u> <u>also</u> <u>United States v. Hammons</u>, 852 F.3d

1052, 1056 (10th Cir. 2017)(Ebel, J.)(applying <u>Voisine v. United States</u>' interpretation of 18

U.S.C. § 921(a)(33)(A) to the ACCA's Elements Clause).

Moreover, the Court can discern no sound reason why its -- or the Tenth Circuit's -- aggravated-assault analysis should proceed differently when the victim is a member of a defendant's household. Consequently, the Court concludes that, under the ACCA's Elements Clause, New Mexico aggravated assault against a household member with a deadly weapon is an ACCA violent felony. Hammons' conviction for that offense is therefore one of the "three previous convictions by any court . . . for a violent felony or a serious drug offense, or both" required for an ACCA enhanced sentence. 18 U.S.C. § 924(e)(1).

## II.   OREGON THIRD-DEGREE ROBBERY IS AN ACCA VIOLENT FELONY UNDER THE ELEMENTS CLAUSE.

Hammons has two convictions for Oregon first-degree robbery. See State v. Hammons, No. 7010, Judgment and Sentence at 1 (Circuit Court of the State of Oregon for Umatilla County, dated December 11, 1981), filed April 21, 2009 (CR Doc. 38-3); State v. Hammons, No. 52166, Order at 1 (Circuit Court of the State of Oregon for Linn County, dated October 30, 1978), filed April 21, 2009 (CR Doc. 38-2). Oregon first-degree robbery occurs when a person commits Oregon third-degree robbery -- i.e., "the person uses or threatens the immediate use of physical force upon the person of another," while "in the course of committing or attempting to commit theft," to prevent or overcome resistance or to compel the property owner "or another person to deliver the property or to engage in other conduct which might aid in the commission of the theft," Or. Rev. Stat. Ann. § 164.395 -- and contemporaneously: "(a) [i]s armed with a deadly weapon; (b) [u]ses or attempts to use a dangerous weapon; or (c) [c]auses or attempts to cause serious physical injury to any person." Or. Rev. Stat. Ann. § 164.415. Hammons' two Oregon first-degree robbery convictions are, thus, ACCA predicates if Oregon third-degree

robbery qualifies as an ACCA violent felony under the Elements Clause.[6]

---

[6]The three aggravators that turn Oregon third-degree robbery into Oregon first-degree robbery mean that Oregon first-degree robbery might satisfy the Elements Clause even if Oregon third-degree robbery does not.  It is not strictly necessary for the Court to address whether those aggravators, taken alone, satisfy the Elements Clause, because the Court concludes that Oregon third-degree robbery satisfies the Elements Clause.  The Court will, however, briefly address that issue in the interest of completeness.

The Court first determines that, per the Supreme Court of Oregon's precedent, the three aggravators that Or. Rev. Stat. Ann. § 164.415 lists are alternative means of committing a single crime and not three alternative elements defining three distinct criminal offenses.  See Mathis v. United States, 136 S. Ct. at 2256 ("The first task for a sentencing court faced with an alternatively phrased statute is thus to determine whether its listed items are elements or means."); id. ("Here, a state court decision definitively answers the question . . . .  When a ruling of that kind exists, a sentencing judge need only follow what it says.").  In Oregon, it is "the nature of the threat of violence -- whether actual or perceived -- [that] aggravates the crime of robbery and raises the crime from the third degree to the second or first degree."  State v. White, 211 P.3d 248, 256 (Or. 2009)(en banc)(Balmer, J., unanimous opinion).

The legislature determined that the threat of violence when a robber purports to have a weapon or when he or she has an accomplice lies somewhere between the threat of violence involved in a confrontation with a lone unarmed robber who threatens but does not use violence and a confrontation with an indisputably armed robber or one who actually uses or attempts to use violence to cause serious injury.

State v. White, 211 P.3d at 257.  Accordingly, the Oregon "legislature created a single crime of second-degree robbery," even though Or. Rev. Stat. Ann. § 164.405 articulates two alternative sets of circumstances that elevate third-degree robbery to second-degree robbery, because "both address the same coercive effect on the victim of the threat of violence, even though they do so in different ways."  State v. White, 211 P.3d 248, 257 (Or. 2009)(en banc)(Balmer, J.).  Given State v. White's reasoning, the Court can discern no sound reason to read Oregon's first-degree robbery statute as defining three separate crimes when Oregon second-degree robbery defines a single crime that someone can commit in two different ways, so the Court concludes that § 164.415's three aggravators are alternative means and not alternative elements.  See State v. White, 211 P.3d at 258 (Kistler, J., concurring; joined by Walters and Linder, JJ.)("First, when the legislature creates two crimes with different degrees of seriousness (first-degree unlawful sexual penetration, second-degree unlawful sexual penetration, and the like), each statutorily designated degree of a crime is a separate statutory provision."); id. ("Second, the fact that a crime, such as first-degree unlawful sexual penetration, identifies multiple ways in which the crime may be committed does not mean that one act will give rise to multiple statutory violations.").

Accordingly, if Oregon third-degree robbery does not satisfy the Elements Clause, the Oregon first-degree robbery satisfies the Elements Clause if and only if all three of § 164.415's

If the Court considered only statutory text, it could begin and end its Elements Clause inquiry by observing that Oregon third-degree robbery does not occur unless a perpetrator "uses or threatens the immediate use of physical force upon another person," Or. Rev. Stat. Ann. § 164.395, so the offense obviously "has as an element the use, attempted use, or threatened use of physical force against the person of another," 18 U.S.C. § 924(e). Text does not, however, always constrain appellate courts, see, e.g., Coats v. Dish Network, LLC, 2015-CO-44, ¶ 20, 350 P.3d 849, 853 (Colo. 2015)(Eid, J.)(holding that the Constitution of the State of Colorado's declaration that "[a] patient's medical use of marijuana, within the following limits, is lawful," Colo Const. art. XVIII, § 14(4)(a), does not make a patient's medical use of marijuana a "lawful activity," Colo. Rev. Stat. Ann. § 24-34-402.5), so the Court must consult both the United States Reports and West's Pacific Reporter Third to determine whether "physical force," Or. Rev. Stat. Ann. § 164.395, qualifies as "physical force," 18 U.S.C. § 924(e).

In the Elements Clause, "the phrase 'physical force' means *violent* force -- that is, force capable of causing physical pain or injury to another person." Johnson I, 559 U.S. at 140 (emphasis in original)(quoting 18 U.S.C. § 924(e)). Common-law battery does not, consequently, satisfy the Elements Clause, because that offense can be accomplished "by even the slightest offensive touching." Johnson I, 559 U.S. at 139. In United States v. Castleman, 134

---

aggravators satisfy the Elements Clause. See Mathis v. United States, 136 S. Ct. at 2256 (stating that, if an alternatively phrased statutes lists different means of committing a single crime, "the court has no call to decide which of the statutory alternatives was at issue in the earlier prosecution."). At least one of those three aggravators -- "[i]s armed with a deadly weapon," Or. Rev. Stat. Ann. § 164.415(1)(a) -- does not satisfy the Elements Clause, see State v. Zimmerman, 12 P.3d 996, 998 (Or. Ct. App. 2000)(Landau, P.J., joined by Linder and Brewer, JJ.)("First-degree robbery may be committed if the individual committing the crime is 'armed with a deadly weapon.' [Or. Rev. Stat. Ann. §] 164.415(1)(a). The person committing the crime need not actually use the deadly weapon, much less make any representations about it."). The Court therefore concludes that Oregon first-degree robbery does not satisfy the Elements Clause unless Oregon third-degree robbery satisfies the Elements Clause.

S. Ct. 1405 (2014), Justice Scalia, <u>Johnson I</u>'s author, observes that hitting, slapping, shoving, biting, and hair pulling bear no "real resemblance to offensive touching, and all of them are capable of causing physical pain or injury." <u>United States v. Castleman</u>, 134 S. Ct. at 1421 (Scalia, J., concurring in part and concurring in judgment). <u>See</u> <u>id.</u> at 1422 (stating that <u>Johnson I</u> identifies a slap in the face "as conduct that might rise to the level of violent force"). <u>See also</u> <u>United States v. Harris</u>, 844 F.3d 1260, 1265 (10th Cir. 2017)(Tymkovich, C.J.)(considering, as persuasive authority, Justice Scalia's <u>United States v. Castleman</u> concurrence).

The Court undertakes a two-step inquiry to determine whether the physical force that Oregon's third-degree robbery statute requires is also Elements Clause physical force. <u>See</u> <u>United States v. Harris</u>, 844 F.3d at 1264 ("A two-step inquiry resolves whether Colorado's robbery statute requires physical force as that term is used in the ACCA."). The Court first determines the minimum amount of force that will satisfy the Oregon third-degree robbery statute and then determines whether that amount of force falls within <u>Johnson I</u>'s physical force definition. <u>See</u> <u>United States v. Harris</u>, 844 F.3d at 1264 ("[W]e must identify the minimum 'force' required by Colorado law for the crime of robbery and then determine if *that* force categorically fits the definition of physical force." (emphasis in original)). <u>See also</u> <u>Moncrieffe v. Holder</u>, 569 U.S. 184, 190-91 (2013)("Because we examine what the state conviction necessarily involved, not the facts underlying the case, we must presume that the conviction 'rested upon [nothing] more than the least of th[e] acts' criminalized, and then determine whether even those acts are encompassed by the [ACCA]." (first two alterations in the original; the Court adds the third alteration)(quoting <u>Johnson I</u>, 559 U.S. at 137)); <u>id.</u> at 191 ("[O]ur focus on the minimum conduct criminalized by the state statute is not an invitation to apply 'legal

imagination' to the state offense; there must be 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the [ACCA]." (quoting Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007))).  Decisions from the Supreme Court of Oregon -- albeit supplemented by Court of Appeals of Oregon decisions -- are the best evidence as to the amount of force required that Oregon third-degree robbery requires.  See United States v. Harris, 844 F.3d at 1264.

Under Oregon law, "[i]t is the concept of fear or threat of violence that separates robbery from mere theft," because in a robbery, "[t]he use or threat of violence is what causes the victim to part with property, and that coercive effect is what each of the robbery statutes addresses." State v. White, 211 P.3d 248, 256 (Or. 2009)(en banc)(Balmer, J., unanimous opinion).  "It is the additional factor of actual or threatened violence that transforms the conduct from theft, which requires only the intent to deprive, into a substantively different crime, robbery." State v. Hamilton, 233 P.3d at 436.  Oregon's modern-day robbery statutes are "a product of the comprehensive revision of the state criminal code in 1971," and their legislative history indicates that "the intent of the robbery statutes is not only to retain the underlying principle in past statutes of prohibiting the forcible taking of property from another, but also to adopt the view that 'repression of violence is the principal reason for being guilty of robbery.'" State v. Hamilton, 233 P.3d at 436 (quoting Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report §§ 150, 154 (1970)).  Oregon robbery thus requires violence; the distinction between third-degree, and second- or first-degree robbery, is only one of degree:

> As the three robbery statutes indicate, the nature of the threat of violence -- whether actual or perceived -- aggravates the crime of robbery and raises the crime from the third degree to the second or first degree.  If the robber is alone or

one of many, unarmed or armed with a deadly or dangerous weapon, the effect of the specific circumstance results in different levels of threat that may persuade the victim to part with his or her property with more or less reluctance. The legislature determined that the threat of violence when a robber purports to have a weapon or when he or she has an accomplice lies somewhere between the threat of violence involved in a confrontation with a lone unarmed robber who threatens but does not use violence and a confrontation with an indisputably armed robber or one who actually uses or attempts to use violence to cause serious injury. In that sense, the three robbery statutes reflect the legislature's judgment regarding the aggravating elements that elevate third-degree robbery to second- or first-degree robbery.

State v. White, 211 P.3d at 256-57. Because Oregon third-degree robbery always requires the use of violence or the threat of violence against another person, and because, under Johnson I, violence qualifies as physical force, the Court concludes that Oregon third-degree robbery is an ACCA violent felony under the Elements Clause.

Neither Johnson Or. nor United States v. Dunlap alter the Court's conclusion. Those who argue that Johnson Or. means that Oregon third-degree robbery is not an ACCA violent felony -- such as Hammons, see Reply at 3, and the United States v. Dunlap court, see 162 F. Supp. 3d at 1113-14 -- misread the Court of Appeals of Oregon's decision. It is important that the Johnson Or. court was reviewing the sufficiency of the evidence introduced at trial. See Johnson Or., 168 P.3d at 313 ("[D]efendant first assigns error to the denial of his motion for a judgment of acquittal on the ground that there was insufficient evidence of physical force to support a conviction for robbery in the third degree."). That procedural posture means that the Johnson Or. court's task was "to determine whether, considering the undisputed facts and drawing all reasonable inferences in the state's favor, a reasonable factfinder could have found, beyond a reasonable doubt, that defendant used physical force on the victim." Johnson Or.,168 P.3d at 313 (citing State v. Hall, 966 P.2d 208 (Or. 1998). See State v. Hall, 966 P.2d at 570 ("We view the evidence in the light most favorable to the state to determine whether a rational trier of fact,

making reasonable inferences, could have found the essential elements of the crime proved beyond a reasonable doubt.").

In Johnson Or., the eighty-six-year-old victim testified that -- as she climbed the steps up to her house at eleven o'clock at night while carrying her purse, a vase of flowers, her cane, and bingo-night snacks -- "she 'thought [she] was losing' her purse and 'felt [her] arm slip[,] . . . reached up to put her purse back and then saw someone running away with her purse and flowers." 168 P.3d at 313 (first two alterations in the original; the third added by the Court). She also testified that "she did not feel a tug or 'much of anything.'" 168 P.3d at 313. That the Johnson Or. court affirmed the defendant's third-degree robbery conviction does not mean, however, that third-degree robbery conviction "requires only minimal force." United States v. Dunlap, 162 F. Supp. 3d at 1114. A reasonable jury could have inferred from the evidence -- taken in the light most favorable to the prosecution -- that a little old lady who was climbing the stairs on her way home from a vigorous, late-night bingo session and who had her hands filled with a vase of flowers, snacks, and a cane was sufficiently distracted, tired, or startled that she did not feel it as the defendant used "force capable of causing physical pain or injury," Johnson I, 559 U.S. at 140, to quickly yank away her purse before she could react, see United States v. Garcia, ___ F.3d ____, 2017 WL 6419307, at *7 (10th Cir. 2017)(O'Brien, J., joined by Tymkovich, C.J. and Hartz, J.)(commenting, regarding a purse-snatcher who touched the inside of his victim's arm and caused her, a seventy-year-old woman, to stumble, that: "We are doubtful, but it may have been a force *capable* of causing pain or injury by setting in motion a chain of events leading to that result." (emphasis in original)). See also Emily Friedman, ABC NEWS, Injury -- What Injury? Fighting the Pain (May 21, 2008), http://abcnews.go.com/ Health/PainManagement/story?id=4895453 ("Dr. Alasdair K.T. Conn, the chief of emergency

services at Massachusetts General Hospital, said he treated two individuals who walked away from a subway accident, only to later find that they both had broken necks.").[7]

Even if the Court's reading of <u>Johnson Or.</u> were erroneous, that would not alter its conclusion that Oregon third-degree robbery satisfies the Elements Clause, because the Court bases that conclusion on the Supreme Court of Oregon's opinions in <u>State v. Hamilton</u> and <u>State v. White</u>, which the Supreme Court of Oregon decided after <u>Johnson Or.</u>[8] Those opinions make

---

[7]That the evidence an appellate court describes in its written opinion is often very different from the totality of the evidence introduced at trial, and the reasonable inferences that a jury could draw from that evidence makes it perilous to rely too heavily or read too much into a single fact-specific, sufficiency-of-the-evidence case. That danger is all the greater when an opinion is applied to an issue that the parties did not argue and the court did not address. For example, <u>Johnson Or.</u> is addressed primarily to a third-degree robbery perpetrator's intent and not to the quantum of force that a perpetrator must use -- "[t]he statute does not focus on the extent to which the victim may or may not have felt the force, but rather on the perpetrator's intent, while using force on the victim, that any resistance that the victim might offer be prevented or overcome" -- because the defendant used intent terminology when making his argument: "Defendant contends that, because the victim was unaware that her property had been taken until after it was gone, defendant necessarily did not apply force to the victim that was meant to overcome her resistance." <u>Johnson Or.</u>, 168 P.3d at 314.

[8]Although both the ACCA and the Rules of Decision Act, 28 U.S.C. § 1652 -- as construed in <u>Erie R. Co. v. Tompkins</u>, 304 U.S. 64 (1938)("<u>Erie</u>") -- require federal courts to look to state substantive law, the proper inquiries are subtly different. When deciding a state-law issue in a diversity-jurisdiction case, <u>Erie</u> means that "the federal court must attempt to predict what the state's highest court would do" if the case came before it today. <u>Wade v. EMCASCO Ins. Co.</u>, 483 F.3d 657, 666 (10th Cir. 2007). The principle that federal courts look to the present content of state law applies even while a case is on appeal. <u>See</u> <u>Vanderbark v. Owens-Ill. Glass Co.</u>, 311 U.S. 538, 542 (1941)(Reed, J.)("[T]he dominant principle is that nisi prius and appellate tribunals alike should conform their orders to the state law as of the time of the entry. Intervening and conflicting decisions will thus cause the reversal of judgments which were correct when entered."). "[A] federal court may sometimes contradict the state supreme court's own precedent if the federal court concludes that the state supreme court would, given the opportunity, overrule its earlier holding." <u>Daye v. Community Financial Loan Service Centers, LLC</u>, ___ F. Supp. 3d ____, 2017 WL 5990133, at *13 n.14 (D. N.M. 2017)(Browning. J.).

In contrast, a federal court's state-law inquiry when applying the ACCA is fundamentally retrospective; the issue is "what a jury 'necessarily found' to convict a defendant (or what he necessarily admitted)," <u>Mathis v. United States</u>, 136 S. Ct. at 2255, and not what a hypothetical jury in a hypothetical present-day trial would have to find to convict a hypothetical defendant. It

it clear that violence and the threat of violence are central to Oregon robbery, and if the Court of

Appeals of Oregon's <u>Johnson Or.</u> opinion suggests otherwise, that inference means only that the

opinion is erroneous, as the Tenth Circuit's recent decision in <u>United States v. Harris</u> suggests:

> Thus far, so much is clear: That robbery in Colorado requires a *violent* taking. <u>See</u> [<u>People v. Borghesi</u>, 66 P.3d 93, 101 n.12 (2003)] (stating Colorado robbery "involves the violent taking 'from a person'"). But Harris argues we should not take the Colorado Supreme Court at its word -- for it might not have meant "violent" when it said "violent." 4 Op. Br. 12. And for this point he relies on <u>People v. Davis</u>, 935 P.2d 79 (Colo. App. 1996). But <u>Davis</u> is a Colorado Court of Appeals decision that predates the Colorado Supreme Court's <u>Borghesi</u> decision. To the extent <u>Davis</u> suggests a Colorado robbery conviction can be based on less than violent force, it is not controlling in light of <u>Borghesi</u>.

<u>United States v. Harris</u>, 844 F.3d at 1267 (footnotes omitted)(emphasis in original). <u>See</u> <u>United</u>

<u>States v. Garcia</u>, ___ F.3d ____, 2017 WL 6419307, at *10 (concluding that New Mexico third-

degree robbery satisfies the Elements Clause while "acknowledge[ing] language in the New

---

would not be sound to think that a conviction changed just because, years or decades after the conviction's entry, the state legislature amended the state statute defining the relevant offense. Likewise, when a decision from a state's highest court avowedly changes the law -- such as by applying a narrowing construction to a statute to save it from invalidation for First Amendment overbreadth -- that change in the law does not alter earlier convictions. <u>See</u> <u>Shuttlesworth v. Birmingham</u>, 394 U.S. 147, 155 (1969)(Stewart, J.)("It does not follow, however, that the severely narrowing construction put upon the ordinance by the Alabama Supreme Court in November of 1967 necessarily serves to restore constitutional validity to a conviction that occurred in 1963 under the ordinance as it was written."). In theory, decisions from a state's highest court that accidentally or silently changed that state's law would produce the same result, but it will be difficult or impossible to distinguish such changes from nonobvious -- but correct -- interpretations of existing law.

    In this case, as in many others, the distinction between the ACCA- and <u>Erie</u>-mandated inquiries is relatively unimportant, because the Court relies on Supreme Court of Oregon cases that -- although they post-date Hammons' Oregon first-degree robbery convictions by approximately three decades -- expound on Oregon's robbery law as it stood from 1971 onward. <u>See</u> <u>State v. Hamilton</u>, 233 P.3d at 436 ("The robbery statutes are a product of the comprehensive revision of the state criminal code in 1971."); <u>State v. White</u>, 211 P.3d at 255 ("The robbery statutes at issue here are the product of the comprehensive revision of the state criminal code in 1971."). Accordingly, <u>State v. Hamilton</u> and <u>State v. White</u> elucidate both present-day Oregon robbery and Oregon robbery <u>circa</u> 1978, when Hammons received his first robbery conviction.

Mexico cases suggesting any quantum of force which overcomes resistance would be sufficient to support a robbery conviction"). The best indication whether a state crime is an ACCA violent felony is, after all, the decisions of that state's highest court; intermediate-appellate-court cases only supplement that body of precedent. See United States v. Harris, 844 F.3d at 1264.

The Court accordingly concludes that Oregon third-degree robbery is an ACCA violent felony under the Elements Clause, and accordingly, that Hammons' two Oregon first-degree robbery convictions are for ACCA violent felonies. Because the Court already concluded that Hammons' New Mexico conviction for aggravated assault against a household member with a deadly weapon is for an ACCA violent felony, Hammons' has three ACCA predicates notwithstanding Johnson II. Accordingly, the Court denies his motion.

**IT IS ORDERED** that: (i) Defendant-Movant Robert L. Hammons' Motion to Correct Sentence Pursuant to 28 U.S.C. § 2255, filed June 24, 2016 (CIV Doc. 6)(CR Doc. 114), is denied; (ii) Defendant-Movant's Objection to United States Magistrate Judge's Proposed Findings & Recommendations, filed May 10, 2017 (CIV Doc. 31)(CR Doc. 137), is overruled; (iii) the United States Magistrate Judge's Proposed Findings and Recommended Disposition, filed April 25, 2016 (CIV Doc. 28)(CR Doc. 136), are adopted; and (iv) the Amended Proposed Findings and Recommended Disposition, filed June 26, 2017 (CIV Doc. 33)(CR Doc. 139), are not adopted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

James A Tierney
  Acting United States Attorney
David M. Walsh
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

     *Attorneys for the Plaintiff/Respondent*

Charles N. Fisher
The Law Office of Charles Fisher
Albuquerque, New Mexico

     *Attorneys for the Defendant/Movant*